On Motion for Rehearing
 

 WARNER, J.
 

 We deny appellant’s motion for rehearing, withdraw our previously issued opinion and substitute the following in its place.
 

 In appealing his conviction for vehicular homicide, appellant claims that the court erred in denying his motion for judgment of acquittal on the enhanced charge of
 
 *468
 
 failing to stop and render aid following the accident resulting in the death. We conclude that the state presented evidence inconsistent with the defendant’s reasonable hypothesis of innocence that he was unaware of the accident. On all other issues we also affirm.
 

 The state charged Knowles with first-degree vehicular homicide, i.e., “the killing of [David Markel] ... caused by [Knowles’s] operation of a motor vehicle ... in a reckless manner likely to cause the death of, or great bodily harm to, another.” § 782.071, Fla. Stat. (2005). The charged crime constituted a first-degree felony because the state alleged that Knowles knew or should have known that an accident occurred, and failed to give aid and information as required by law. § 782.071(l)(b), Fla. Stat.
 

 The accident occurred around 10:30 a.m., on a clear sunny day, amid moderate traffic, on the southbound lanes of the Florida turnpike, a few miles north of the PGA Boulevard exit, where the speed limit was seventy miles per hour. Knowles was driving his orange Dodge Dakota truck southbound on the turnpike to visit his father in Fort Lauderdale. Ken Borman was a passenger in the vehicle.
 

 Several witnesses observed part or all of the chain of events which led to the death of Markel. David Blitstein and Rene Can-tin both observed erratic driving by an orange vehicle. Blitstein was proceeding south in the right lane, looked to his left, and saw an orange truck driving directly towards his car’s driver-side door. Blit-stein swerved to the right and ended up on the shoulder, at which point he turned back to the left and continued driving in the right lane. Cantin was driving south in the left lane when he observed an orange truck in his rear-view mirror approaching quickly and weaving in and out of traffic. The truck passed Cantin on the right and pulled into the left lane in front of Cantin.
 

 A bit further south of Blitstein and Can-tin, Michael Willover was driving between seventy and seventy-five miles per hour in the left lane. Markel was driving a white Toyota Tundra pick-up truck in the right lane about a half-a-car-length ahead of Willover. In his rear-view mirror, Will-over noticed Knowles’s orange truck in the left lane, approaching rapidly. Knowles moved to the right lane, came up beside Willover’s car, and attempted to force his way back into the left lane, in front of Willover. Willover slowed down and Knowles managed to get around him without hitting Willover or Markel. Knowles fishtailed his vehicle to the right and then to the left. Willover thought that fishtailing caught Markel by surprise.
 

 Markel turned the wheel hard to the right to avoid the orange truck, then turned the wheel back to the left, and finally made a hard right turn onto the shoulder. Markel’s truck then rolled over multiple times until it came to rest in a ditch. Vai'ious witnesses testified that Knowles did not tap on his brakes but continued driving southbound without stopping. Knowles’s truck had fully functioning rear and side view mirrors. According to Borman, Knowles’s passenger, Markel swerved from the right lane into the left lane, forcing Knowles to swerve left towards the guardrail. Markel then straightened the car out, and Knowles continued driving southbound without stopping. Borman did not notice anything which would have suggested that the white truck crashed. Willover, who was behind Knowles’s vehicle, only saw Markel begin to roll his car as he passed. He did not see the accident, nor did he see any debris flying.
 

 Markel died as a result of injuries suffered in the crash. Knowles did not stop
 
 *469
 
 at the scene of the accident but exited the turnpike, stopped at a Mobil gas station, and then proceeded over other roads to his father’s home in Fort Lauderdale. Because a witness -was able to obtain a license plate number, Knowles was eventually found and arrested for vehicular homicide.
 

 At his trial, in addition to the witnesses to the accident, the state presented the lead traffic homicide investigator as an accident reconstruction expert. Mary Go-dino ascertained from the physical evidence and witness statements that Markel was traveling seventy miles per hour when he hit his brakes, veered sharply right onto the shoulder, back onto the road and into the left lane, then to the right and onto the shoulder again. As a result, he lost control of the car which rolled several times until it came to a stop in a ditch. Based upon the physical evidence as well as the witness reports, she concluded that Knowles caused the accident through his driving actions.
 

 After the trial court denied Knowles’s motion for judgment of acquittal, Knowles’s passenger, Ken Borman, testified that he had not noticed anything unusual in his drive down to Fort Lauderdale with Knowles. While he saw Markel turn into Knowles’s lane, and the two cars almost touched, he did not see any debris flying nor any accident. Knowles’s wife and father testified that Knowles acted normally that day and did not look bothered by anything.
 

 During the charge conference, defense counsel requested that the court give a lesser included charge of reckless driving. The court denied the request. The jury was charged and returned a verdict finding Knowles guilty as charged, finding that he knew or should have known of the accident and failed to stop and render aid. The court sentenced him to thirty years in prison. He appeals his conviction.
 

 In
 
 Pagan v. State,
 
 830 So.2d 792, 808 (Fla.2002), the supreme court articulated the standard for review of a judgment of acquittal.
 

 In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. However, if the State’s evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant’s reasonable hypothesis of innocence.
 

 (citations omitted). Nevertheless,
 

 The state is not required to “rebut conclusively every possible variation” of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant’s theory of events. Once that threshold burden is met, it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
 

 State v. Law,
 
 559 So.2d 187, 189 (Fla.1989) (citation and footnote omitted).
 

 The state charged Knowles with vehicular homicide under section 782.071(l)(b), Florida Statutes. That section requires that the state prove the killing of a human being “caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another” and that “1. At the time
 
 *470
 
 of the accident, the person knew, or should have known, that the accident occurred; and 2. The person failed to give information and render aid as required by s. 316.062.”
 

 Knowles moved for judgment of acquittal, arguing that the evidence of whether he knew or should have known that an accident occurred was circumstantial in this case. He posited a reasonable hypothesis of innocence that he did not know an accident occurred, nor should he have known as he had passed the scene before the Markel vehicle rolled over. After a careful review of all of the evidence in the case in a light most favorable to the state in accordance with the foregoing legal standard, we conclude that the state presented evidence inconsistent with the reasonable hypothesis of innocence.
 

 This is an atypical case, because the Knowles vehicle never contacted the Mark-el vehicle. When Knowles cut in front of Willover’s vehicle and ended up beside Markel in the left lane, Markel reacted by pulling his vehicle to the right, then to the left, and finally sharply to the right when it left the road, went into the grass, and began to roll. Knowles was right beside Markel when he first pulled to the right, and his own passenger observed Markel swerve. Willover testified that he heard a very loud noise of Markel’s tire screeching as the Markel vehicle swerved sharply. The state asked the following unobjected-to question and received a response which is inconsistent with Knowles’s hypothesis of innocence:
 

 Q. When you saw the vehicle go from right to left back to right, you said that the orange vehicle wasn’t that far, well far ahead I think as defense described it, was there anything obstructing the view from the orange vehicle to the white vehicle during this rollover and during this crash and loss of control?
 

 A. I’d say no.
 
 It happened in that
 
 [sic]
 
 seconds right next to it. So 1 don’t think anything could have impaired the view of one to the other.
 

 (emphasis supplied). In light of this testimony, taken together with the loud noise of Markel’s vehicle as it swerved and the fact that Knowles’s vehicle fishtailed right beside the Markel vehicle, coming within a couple of feet of it, we conclude that the evidence was inconsistent with Knowles’s claim that he was unaware of the accident that was beginning to unfold right beside him. Therefore, the court properly submitted the issue to the jury for resolution.
 

 Knowles also claims that his conviction for vehicular homicide should be reversed because the state failed to instruct on the lesser included offense of reckless driving. The court denied Knowles’s request based on
 
 State v. Barritt,
 
 531 So.2d 338 (Fla.1988), and ultimately instructed the jury on vehicular homicide under section 782.071, Florida Statutes. In
 
 Barritt,
 
 531 So.2d at 339, the supreme court recognized that “reckless driving is a necessarily lesser included offense of vehicular homicide” and that a defendant is normally “entitled to an instruction on all necessarily lesser included offenses.” However, the coirnt held that “[i]f vehicular homicide is charged, a requested instruction on reckless driving need not be given where it is undisputed that a death has occurred as a result of the accident.”
 
 Id.
 

 The evidence was undisputed that Mark-el’s death was the result of the accident. Knowles only disputed whether he caused the accident, as he argued that Market's own conduct in losing control over his vehicle caused him to roll over. In
 
 Reaves v. State,
 
 979 So.2d 1066, 1069 (Fla. 1st DCA 2008), the First District noted that a “decedent’s conduct may only be asserted as a
 
 *471
 
 defense to vehicular homicide when that conduct could be viewed as the
 
 sole
 
 proximate cause of the accident which resulted in the death.” In this case, Market’s conduct alone did not cause the accident. Knowles’s angling his car between Markel and Willover together with Markel’s response thereto, caused the accident. We agree with the trial court that
 
 Barritt
 
 controls.
 

 We affirm as to the remaining issues raised. Although we do not conclude that the trial court erred in its rulings, even if errors occurred, we would find them harmless beyond a reasonable doubt. With, respect to the accident reconstruction expert describing Knowles’s driving as “possibly reckless,” the defense did not object to that comment. While the defense had objected to the expert testifying that Knowles caused the accident, the description of Knowles’s driving as reckless was not within the scope of that objection.
 

 Affirmed.
 

 POLEN, J„ and KAPLAN, MICHAEL G., Associate Judge, concur.